Michael T. Pieja (CA Bar No. 250351)
Alan E. Littmann (*pro hac vice* to be filed)
Lauren Abendshien (*pro hac vice* to be filed)
GOLDMAN ISMAIL TOMASELLI
  BRENNAN & BAUM LLP
200 South Wacker Dr., 22nd Floor
Chicago, IL 60606
Tel: (312) 681-6000
Fax: (312) 881-5191
mpieja@goldmanismail.com
alittmann@goldmanismail.com
labendshien@goldmanismail.com

(Additional counsel listed in signature block)

*Attorneys for Plaintiff Apple Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC., <br><br> Plaintiff, <br><br> v. <br><br> KOSS CORPORATION, <br><br> Defendant. | Case No. 5:20-cv-05504 <br><br> **APPLE INC.'S COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT OF NON-INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Apple Inc. ("Apple") files this Complaint to enjoin Defendant Koss Corporation ("Koss") from further breaching the Parties' Confidentiality Agreement, as well as for a declaratory judgment of non-infringement. In support of its Complaint, Apple alleges as follows:

## NATURE OF THE ACTION

1. On July 22, 2020, Koss filed a patent infringement action against Apple in the United States District Court for the Western District of Texas. (Compl., *Koss Corporation v. Apple Inc.*, No. 6:20-cv-00665, Dkt. No. 1 ("Texas Complaint").) Koss' Texas Complaint (a) is barred by, and is a breach of, a 2017 Confidentiality Agreement that the parties entered at Koss' insistence, and (b) asserts baseless claims of patent infringement. This Complaint seeks relief for Apple on each of these grounds.

2. In 2017, Koss sought out Apple in a purported attempt to engage in licensing discussions. Despite Apple's request that all discussions be conducted without restriction, Koss insisted that the parties enter into a written Confidentiality Agreement. The parties ultimately signed such an agreement, with an effective date of August 6, 2017 (the "Confidentiality Agreement"). In the Confidentiality Agreement, Koss and Apple agreed that neither party would "use or attempt to use any Communications [between the parties], or the existence thereof, in a litigation or any other administrative or court proceeding for any purpose."

3. According to the terms of the Confidentiality Agreement, while the agreement was in force, Apple could not advise a Court of Koss' threats to file baseless infringement claims or ask a Court to declare Apple's rights and resolve the legal uncertainty it faced. The Confidentiality Agreement also restricted how Apple could disclose and use the existence and contents of the discussions. But the agreement also protected Apple—Koss was not permitted to later use the fact that Apple had agreed to a discussion with Koss, or the contents of the discussion, against Apple in litigation. In other words, having enticed Apple to participate in discussions, reveal information, and forego some of its legal options, Koss could not use Apple's participation against it as a "gotcha" to bring claims in a later litigation.

4. That, however, is exactly what Koss did. After securing Apple's assent to the Confidentiality Agreement, Koss filed the Texas Complaint, which revealed and described the parties'

discussions, and included multiple different claims that relied on the very discussions Koss had agreed not to use in litigation. For example, Koss alleged in the Texas Complaint that it had "informed Apple that it was infringing" one of its patents on September 7, 2017, and that, "over the following two and a half years, Koss and its representatives met with Apple a total of four times in Apple's California offices" to discuss claim charts and infringement allegations.

5. Koss' willful violation of the Confidentiality Agreement must be addressed immediately. Koss has shown that it will not abide by the agreement and is willing to violate its express terms without any regard for its contractual obligations or for the harm inflicted on Apple. Unless enjoined, Koss is likely to continue impermissibly breaching the Confidentiality Agreement.

6. Although Koss has sued Apple in Texas, it had no legal right to do so—the claims it brought are squarely foreclosed by the Confidentiality Agreement. But the filing of Koss' Texas Complaint, and the allegations in it, make clear that Koss has a long history of threatening Apple with alleged violations of its patent rights, and that it has no intention of stopping any time soon. Koss' infringement allegations are baseless: as Koss knows from the very confidential discussions it has impermissibly used and disclosed, Apple does not infringe any of Koss' asserted claims. To finally put Koss' litany of infringement threats to rest, therefore, in addition to seeking to enjoin Koss from its continuing breach of the Confidentiality Agreement, Apple seeks a declaratory judgment of non-infringement.

7. The appropriate venue for this dispute is California. As Koss noted in its Texas Complaint, Koss and Apple met several times in this District, where Apple is headquartered, and the allegedly infringing products are designed and developed by Apple engineers working in or near Apple's Cupertino, California, headquarters.

**THE PARTIES**

8. Plaintiff Apple Inc. is a California corporation having its principal place of business at One Apple Park Way, Cupertino, California 95014. Apple has over 35,000 employees who work in or near its headquarters in Cupertino, California.

9. Apple is a leading designer and manufacturer of mobile communication devices, personal computers, portable digital media players, and headphones. As a result of its significant

investment in research and development, Apple has developed innovative technologies that have changed the face of the computing and telecommunications industries for four decades.

10. Apple's many pioneering and revolutionary products reflect decades of innovation, and include the Macintosh PC (first released in 1984), PowerBook (first released in 1991), Newton (first released in 1993), PowerMac (first released in 1994), iMac (first released in 1998), iPod (first released in 2001), iTunes Store (opened in 2003), MacBook (first released in 2006), iPhone and Apple TV (first released in 2007), Apple App Store (opened in 2008), Siri (first released 2010), iPad (first released in 2010), Apple Watch (first released in 2015), and AirPods (first released in 2016).

11. The United States Patent & Trademark Office has awarded Apple thousands of patents protecting the technological inventions underlying Apple's groundbreaking products and services, including on technology relating to Apple's AirPods and HomePod products. Many well-known functionalities and features of Apple's products were made possible with the inventions of Apple engineers working in and around its Cupertino headquarters.

12. On information and belief, Defendant Koss Corporation is a company organized and existing under the laws of Delaware with a principal place of business at 4129 N. Port Washington Avenue, Milwaukee, Wisconsin 53212.

**JURISDICTION AND VENUE**

13. The Court has subject matter jurisdiction over the declaratory-judgment claims presented in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because these claims arising under the patent laws of the United States, 35 U.S.C. § 1, et seq., and under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

14. On July 22, 2020, Koss filed a complaint against Apple in the Western District of Texas alleging that certain of Apple's products infringe United States Patent Nos. 10,206,025 (the "'025 Patent"); 10,298,451 (the "'451 patent"); 10,469,934 (the "'934 Patent"); 10,491,982 (the "'982 Patent"); and 10,506,325 (the "'325 Patent") (collectively, the "Patents-in-Suit").

15. While the timing and form of Koss' claims in the Texas Complaint are barred by the parties' Confidentiality Agreement, the Texas Complaint makes clear that there is and remains a substantial controversy between Apple and Koss with regard to the non-infringement of the Patents-

in-Suit, and that this controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of non-infringement. In particular, Apple asserts that Apple's products, including its AirPods and HomePod, do not infringe the Patents-in-Suit (as identified below), directly or indirectly, literally or under the doctrine of equivalents. As the Texas Complaint reveals, Koss contends that Apple's products do infringe the Patents-in-Suit. This Court thus has subject-matter jurisdiction over Apple's claims seeking a declaratory judgment to resolve Apple's rights with respect to these legal issues.

16. The Court has supplemental jurisdiction over the breach-of-contract claims asserted herein pursuant to 28 U.S.C. § 1367, because those claims are so related to the declaratory-judgment claims that they comprise part of the same case or controversy. For example, the breach-of-contract claims asserted herein are based in part on the fact that Koss has asserted claims against Apple relating to the patents at issue in the declaratory-judgment claims that are barred by the contract at issue.

17. The Court also has jurisdiction over the breach-of-contract claims asserted herein pursuant to 28 U.S.C. § 1332(a)(1) because Apple and Koss are citizens of different states and the amount in controversy herein exceeds $75,000. As set forth above, Apple is incorporated in and has its principal place of business in the state of California. Koss is incorporated in the state of Delaware and has its principal place of business in Wisconsin. Therefore, the claims asserted herein are between citizens of different states.

18. Further, the amount in controversy of the breach-of-contract claims herein exceeds $75,000. These claims seek relief in the form of an injunction barring Koss from violating a contractual agreement between the parties by, among other things, making contractually-barred (and false) claims that Apple willfully infringes certain patents. The value of this relief exceeds $75,000 at least because the cost to Apple of defending against claims brought in breach of the parties' contractual obligations would exceed that amount.

19. The Court has personal jurisdiction over Koss in this action because Koss has directed and continues to direct acts to this District, including acts pertaining to the Patents-in-Suit and acts giving rise to the claims for relief asserted in this action. Further, Koss has, and has had, continuous and systematic contacts within the State of California, including this District, and has purposefully

directed business activities into and in this District. For example, Koss directs sales of its own products to consumers in this District and has placed its products into the stream of commerce with the knowledge that they will be sold and used in this District. In addition, a substantial part of the events giving rise to the claims alleged in this Complaint occurred in this District.

20. As Koss alleged in the Texas Complaint, over the course of two and a half years, Koss and its representatives traveled on multiple occasions to Apple's offices in this District, to meet with Apple and discuss Koss' patent portfolio, including Koss' allegations that Apple infringed the Patents-in-Suit. (Texas Complaint ¶ 71.) As Koss also recounted in the Texas Complaint, Koss' employees and representatives directed correspondence alleging infringement to Apple's representatives in California and entered into an agreement with Apple in California to preserve the confidentiality of the substance and existence of their communications. (*Id. e.g.* ¶¶ 72, 85, 99, etc.)

21. As further recounted in the Texas Complaint, Koss has made statements in this District alleging that Apple's AirPods and HomePod infringe the Patents-in-Suit, including through claim charts directed to Apple in this District. (*Id.* ¶¶ 95, 96, 99, etc.) Koss asserted during the meetings in this District that Apple requires a license to Koss' patent portfolio, including the Patents-in-Suit (which Apple disputes). Further, Koss has filed multiple litigations against other manufacturers of wearable devices alleging infringement of the Patents-in-Suit, including suits against Bose Corporation (alleged to infringe the '025 and '934 Patents), Peag LLC (alleged to infringe the '025, '982, and '325 Patents), Plantronics (alleged to infringe the '025 and '325 Patents), and Skullcandy (alleged to infringe the '025, '934, '982, and '325 Patents).

22. As set forth above, Koss has purposefully availed itself of the benefits of doing business and conducting activities in California, and has more than sufficient minimum contacts with California, including within this District, such that this declaratory judgment action meets the requirements of California's long-arm statute. Further, the assertion of jurisdiction over Koss here is reasonable and fair, at least because Koss engaged in activity giving rise to the causes of action herein in this District and directed its activities to a resident of this District.

23. Venue is proper in this District. Apple resides in this District and Koss has alleged that Apple has committed acts of infringement in this District related to the Patents-in-Suit. This District

is the most convenient District for the present declaratory judgment claims because, among other things, the witnesses and evidence concerning the Apple Accused Products are located in this District. This District is also the most convenient District for injunctive relief because Apple's witnesses and evidence concerning the Confidentiality Agreement are located in this District.

**INTRA-DISTRICT ASSIGNMENT**

24.     For purposes of intra-district assignment under Civil Local Rules 3-2(c) and 3-5(b), this intellectual property action will be assigned on a district-wide basis.

**FACTUAL BACKGROUND**

**A.     The Confidentiality Agreement.**

25.     Koss and Apple entered into a written agreement entitled "Confidentiality Agreement" with an effective date of August 6, 2017 (the "Confidentiality Agreement"). The Confidentiality Agreement identified Apple and Koss as the parties thereto, stating: "This Confidentiality Agreement (the "Agreement") is entered into and is effective as of August 6, 2017 (the "Effective Date") by and between Apple Inc., having its principal place of business at 1 Infinite Loop, Cupertino, California 95014, and its affiliates ("Apple") and Koss Corporation, a Delaware corporation, having its principal place of business at 4129 N. Port Washington Rd., Milwaukee, WI 53212, its affiliates and successors in interest to the Patents (collectively "Company") (each of Apple and Company a "Party" and together "Parties")."

26.     The Confidentiality Agreement is an enforceable contract.

27.     Paragraph 5 of the Confidentiality Agreement states that "the Parties agree not to use or attempt to use any Communications, or the existence thereof, in a litigation or any other administrative or court proceeding for any purpose."

28.     Paragraph 1 of the Confidentiality Agreement defines "Communications" as "communications, discussions, presentations, documents, or notes exchanged between the Parties in any form, whether before or during the Term, in connection with the Purpose, including any other materials reflecting the content thereof."

/ / /

/ / /

29. The Confidentiality Agreement defines the "Purpose" as discussions and evaluations regarding "a potential license, acquisition or other transactions relating to patents that [Koss] represents it owns or controls."

30. Under Paragraph 14 of the Confidentiality Agreement, the obligations of Paragraph 5, including their restriction on the use of any Communications, survives any termination of the Agreement. Although the Confidentiality Agreement was terminated by Koss as of July 22, 2020, Paragraph 14 states that "Termination of this Agreement shall not relieve Recipient of its confidentiality and use obligations with respect to Discloser's Confidential Information and Communications disclosed prior to the date of termination." Paragraph 14 further states that "Sections . . . 5 (Restrictions on Use of Communications) . . . shall survive termination." The obligations of Paragraph 5 of the Confidentiality Agreement were therefore in force on July 22, 2020, and remain in force today.

31. Under Paragraph 20 of the Confidentiality Agreement, Apple may seek an injunction or other equitable relief in this District to enforce any right or obligation under the agreement, including to enforce the restrictions on the use of communications described in Paragraph 5.

32. Duly authorized representatives of Apple and Koss, with authority to bind their respective parties, signed the Confidentiality Agreement.

33. The promises embodied in the Confidentiality Agreement were supported by consideration.

34. On July 22, 2020, Koss filed a lawsuit against Apple in the Western District of Texas, Waco Division, styled *Koss Corporation v. Apple Inc.* (the "Texas Complaint").

35. On at least eighteen separate occasions, the Texas Complaint describes, references, uses, and relies on communications between Koss and Apple. Some examples are provided below.

36. Paragraph 70 of the Texas Complaint states: "On September 7, 2017 Koss informed Apple that it was infringing U.S. Patent No. 9,729,959, a parent of several of the Patents-in-Suit."

37. The reference in Paragraph 70 of the Texas Complaint to "Koss inform[ing] Apple" of its supposed infringement of the '959 Patent is a reference to a communication from Koss, or its attorneys or agents, to Apple.

38. The communication by which Koss allegedly "informed" Apple of its supposed infringement of the '959 Patent, as referenced in Paragraph 70 of the Texas Complaint, is a "Communication" within the definition of Paragraph 5 of the Confidentiality Agreement between Koss and Apple.

39. By including Paragraph 70 in the Texas Complaint, Koss has used, in litigation, Communications subject to Paragraph 5 of the Confidentiality Agreement.

40. Paragraph 71 of the Texas Complaint states: "Over the following two and a half years, Koss and its representatives met with Apple a total of four times in Apple's California offices and in the course of those meetings, as well as several additional email exchanges, provided Apple with claim charts identifying how Apple infringed certain of Koss's patents, including each of the Patents-in-Suit."

41. The references in Paragraph 71 of the Texas Complaint to "meetings" and "email exchanges" by which Koss "provided Apple with claim charts" are references to written or oral communications between Koss, or its attorneys or agents, and Apple.

42. The "meetings" and "email exchanges" by which Koss "provided Apple with claim charts," as referenced in Paragraph 71 of the Texas Complaint, are "Communications" within the definition of Paragraph 5 of the Confidentiality Agreement between Koss and Apple.

43. By including Paragraph 71 in the Texas Complaint, Koss has used, in litigation, Communications subject to Paragraph 5 of the Confidentiality Agreement.

44. Paragraph 72 of the Texas Complaint states: "Prior to the filing of the instant Complaint, Koss informed Apple of its belief that Apple was infringing each of the Patents-in-Suit."

45. The reference in Paragraph 72 of the Texas Complaint to "Koss inform[ing] Apple" of its supposed infringement of the Patents-in-Suit is a reference to a communication from Koss, or its attorneys or agents, to Apple.

46. The communication by which Koss allegedly "informed" Apple of its supposed infringement of the Patents-in-Suit, as referenced in Paragraph 72 of the Texas Complaint, is a "Communication" within the definition of Paragraph 5 of the Confidentiality Agreement between Koss and Apple.

47. By including Paragraph 72 in the Texas Complaint, Koss has used, in litigation, Communications subject to Paragraph 5 of the Confidentiality Agreement.

48. Paragraph 85 of the Texas Complaint states: "Upon information and belief, Apple was aware of its infringement of the '025 Patent at least as early as February 12, 2019, when the '025 Patent issued, through Apple's own freedom-to-operate analysis, **initiated, in part, due to the communications Apple was having with Koss at that time**." (Emphasis added.)

49. The reference in Paragraph 85 of the Texas Complaint to "the communications Apple was having with Koss at that time" is a reference to communications between Koss, or its attorneys or agents, and Apple.

50. The "communications Apple was having with Koss," referenced in Paragraph 85 of the Texas Complaint, are "Communications" within the definition of Paragraph 5 of the Confidentiality Agreement between Koss and Apple.

51. By including Paragraph 85 in the Texas Complaint, Koss has used, in litigation, Communications subject to Paragraph 5 of the Confidentiality Agreement.

52. Koss' Texas Complaint alleges that Apple induced infringement of each of the Patents-in-Suit. This claim requires, as Koss acknowledges, that Apple had knowledge of the Patents-in-Suit prior to the filing of the Texas Complaint and that Apple acted with knowledge that it was inducing infringement. Koss' only bases for these allegations in its Texas Complaint are communications whose use in litigation is barred under the Confidentiality Agreement.

53. Koss' Texas Complaint alleges that Apple is liable for contributory infringement of each of the Patents-in-Suit. This claim requires, as Koss acknowledges, that Apple had knowledge of the Patents-in-Suit prior to the filing of the Texas Complaint and that Apple acted with knowledge that its products were especially made for use in an infringement of the relevant patents. Koss' only bases for these allegations in its Texas Complaint are communications whose use in litigation is barred under the Confidentiality Agreement.

54. Koss' Texas complaint alleges that Apple willfully infringed each of the Patents-in-Suit. This claim requires, as Koss acknowledges, that Apple had knowledge of the Patents-in-Suit

prior to the filing of the Texas Complaint. Koss' only bases for these allegations in its Texas Complaint are communications whose use in litigation is barred under the Confidentiality Agreement.

**B.     The Patents-in-Suit.**

55.     On February 12, 2019, the Patent Office issued the '025 Patent, entitled "System With Wireless Earphones," naming as inventors Michael J. Koss, Michael J. Pelland, Michael Sagan, Steven R. Reckamp, Gregory J. Hallingstad, Jeffery K. Bovee, and Morgan J. Lowery. A true and correct copy of the '025 Patent is attached to this Complaint as Exhibit 1. On information and belief, Koss purports to own by assignment the '025 Patent.

56.     On May 21, 2019, the Patent Office issued the '451 Patent, entitled "Configuring Wireless Devices For A Wireless Infrastructure Network," naming as inventors Michael J. Koss, Michael J. Pelland, and Joel L. Haynie. A true and correct copy of the '451 Patent is attached to this Complaint as Exhibit 2. On information and belief, Koss purports to own by assignment the '451 Patent.

57.     On November 5, 2019, the Patent Office issued the '934 Patent, entitled "System With Wireless Earphones," naming as inventors Michael J. Koss, Michael J. Pelland, Michael Sagan, Steven R. Reckamp, Gregory J. Hallingstad, Jeffery K. Bovee, and Morgan J. Lowery. A true and correct copy of the '934 Patent is attached to this Complaint as Exhibit 3. On information and belief, Koss purports to own by assignment the '934 Patent.

58.     On November 26, 2019, the Patent Office issued the '982 Patent, entitled "System With Wireless Earphones," to Michael J. Koss, Michael J. Pelland, Michael Sagan, Steven R. Reckamp, Gregory J. Hallingstad, Jeffery K. Bovee, and Morgan J. Lowery. A true and correct copy of the '982 patent is attached to this Complaint as Exhibit 4. On information and belief, Koss purports to own by assignment the '982 Patent.

59.     On December 10, 2019, the Patent Office issued the '325 Patent, entitled "System With Wireless Earphones," to Michael J. Koss, Michael J. Pelland, Michael Sagan, Steven R. Reckamp, Gregory J. Hallingstad, Jeffery K. Bovee, and Morgan J. Lowery. A true and correct copy of the '325 Patent is attached to this Complaint as Exhibit 5. On information and belief, Koss purports to own by assignment the '325 Patent.

## COUNT ONE

**Breach of Contract (Paragraph 5 of the Confidentiality Agreement)**

60. Apple incorporates by reference the preceding allegations of its Complaint.

61. Under Paragraph 5 of the Confidentiality Agreement, Koss was prohibited from using or attempting to use "any Communications, or the existence thereof, in a litigation or any other administrative or court proceeding for any purpose."

62. The Confidentiality Agreement was and is a valid written contract between Apple and Koss, executed by duly authorized representatives of the parties thereto, and supported by consideration.

63. The obligations of Paragraph 5 of the Confidentiality Agreement were in effect and in force as of July 22, 2020, and remain in effect today.

64. In filing the Texas Complaint on July 22, 2020, Koss disclosed and used "Communications," as that term is defined in the Confidentiality Agreement. At least Paragraphs 70, 71, 72, 81, 82, 85, 95, 96, 99, 109, 110, 113, 123, 124, 127, 137, 138, and 141 of the Texas Complaint disclose the existence or substance of, or use, Communications subject to the Confidentiality Agreement.

65. By using the Parties' Communications in the Texas Litigation as set forth above, Koss has breached at least Paragraph 5 of the Confidentiality Agreement.

66. Unless enjoined by this Court, there is a substantial risk that Koss will continue to violate the Confidentiality Agreement. For instance, as set forth above, Koss has filed numerous litigations against other defendants for allegedly infringing various patents including the Patents-in-Suit and other, related patents. Further, Koss continues to prosecute patent applications related directly to the Patents-in-Suit. Unless enjoined by this Court, there is a substantial likelihood that Koss will again violate the Confidentiality Agreement, for instance by using protected communication to assert additional issued patents against Apple, or by using protected communications in the course of prosecuting patents related to the Patents-in-Suit, in an effort to obtain additional patents that can be asserted against Apple.

/ / /

67. Unless Koss is enjoined by this Court, Apple will suffer irreparable harm. For instance, Apple will be forced to divert resources to defend against legal claims that Koss is contractually barred from asserting. Apple will also suffer harm from being the subject of false and legally impermissible allegations that it willfully infringed Koss' patents. These damages cannot be fully quantified or reduced to a dollar value or similar measure and are not compensable through money damages alone.

## COUNT TWO

### Non-Infringement of United States Patent No. 10,206,025

68. Apple incorporates by reference the preceding allegations of its Complaint.

69. Claim 1 of the '025 Patent requires a "headphone assembly" containing a "processor [] for, upon activation of a user-control of the headphone assembly, initiating transmission of a request to the remote, network-connected server." (Ex. 1, '025 Pat. 18:30–33.)

70. Koss has asserted, at least through its Texas Complaint, that Apple's AirPods infringe claim 1 of the '025 Patent.

71. Apple's AirPods do not "initiate transmission of a request" to any "remote, network-connected, server," as the '025 Patent requires. Rather, Apple's AirPods only communicate with, and initiate transmission to, a local device.

72. For at least the exemplary reasons set forth above, Apple has not infringed and does not infringe at least claim 1 of the '025 Patent, either directly or indirectly, literally or under the doctrine of equivalents, including through its making, use, sale or offer for sale in, or importation into the United States of the Apple AirPods.

## COUNT THREE

### Non-Infringement of United States Patent No. 10,298,451

73. Apple incorporates by reference the preceding allegations of its Complaint.

74. Claim 1 of the '451 Patent requires a "system" in which a "mobile computer device" "transmit[s] to the electronic device . . . credential data for the infrastructure wireless network stored by the one or more host servers." (Ex. 2, '451 Pat. 8:42–47.)

/ / /

75. Koss has asserted, at least through its Texas Complaint, that Apple's HomePod, used in connection with other Apple devices, infringes claim 1 of the '451 Patent.

76. The HomePod is not sent "credential data" from storage on "one or more host servers." Rather, the HomePod may connect to a wireless network by receiving data stored on another local device.

77. For at least the exemplary reasons set forth above, Apple has not infringed and does not infringe at least claim 1 of the '451 Patent, either directly or indirectly, literally or under the doctrine of equivalents, including through its making, use, sale or offer for sale in, or importation into the United States of the Apple HomePod.

## COUNT FOUR

### Non-Infringement of United States Patent No. 10,469,934

78. Apple incorporates by reference the preceding allegations of its Complaint.

79. Claim 1 of the '934 Patent requires a "headphone assembly" containing a "processor [] configured to, upon activation of a user-control of the headphone assembly, initiate transmission of a request to a remote, network-connected server." (Ex. 3, '934 Pat. 18:25–28.)

80. Koss has asserted, at least through its Texas Complaint, that Apple's AirPods infringes claim 1 of the '934 Patent.

81. Apple's AirPods do not "initiate transmission of a request" to any "remote, network-connected, server," as the '934 Patent requires. Rather, Apple's AirPods only communicate with, and initiate transmission to, a local device.

82. For at least the exemplary reasons set forth above, Apple has not infringed and does not infringe at least claim 1 of the '934 Patent, either directly or indirectly, literally or under the doctrine of equivalents, including through its making, use, sale or offer for sale in, or importation into the United States of the Apple AirPods.

## COUNT FIVE

### Non-Infringement of United States Patent No. 10,491,982

83. Apple incorporates by reference the preceding allegations of its Complaint.

/ / /

84. Claim 1 of the '982 Patent requires "a pair of first and second wireless earphones to be worn simultaneously by a user, . . . wherein each of the first and second earphones comprises . . . an ear canal portion that is inserted into an ear of the user when worn by the user." (Ex. 4, '982 Pat. 18:9–22.)

85. Koss has asserted, at least through its Texas Complaint, that Apple's AirPods infringe claim 1 of the '982 Patent.

86. Apple's AirPods do not have "an ear canal portion that is inserted into an ear of the user when worn by the user," as the '982 Patent requires, as Apple's AirPods are not inserted into the user's ear canal.

87. For at least the exemplary reasons set forth above, Apple has not infringed and does not infringe at least claim 1 of the '982 Patent, either directly or indirectly, literally or under the doctrine of equivalents, including through its making, use, sale or offer for sale in, or importation into the United States of the Apple AirPods.

## COUNT SIX

### Non-Infringement of United States Patent No. 10,506,325

88. Apple incorporates by reference the preceding allegations of its Complaint.

89. Claim 1 of the '325 Patent requires "a pair of first and second wireless earphones to be worn simultaneously by a user, . . . wherein each of the first and second earphones comprises . . . a curved hanger bar" that "comprises a portion that rests upon an upper external curvature of an ear of the user behind an upper portion of an auricula of the ear of the user." (Ex. 5, '325 Pat. 18:6–20.)

90. Koss has asserted, at least through its Texas Complaint, that Apple's AirPods infringe claim 1 of the '325 Patent.

91. Apple's AirPods do not have "a curved hanger bar [that] rests upon an upper external curvature of an ear of the user behind an upper portion of an auricula of the ear of the user," as the '325 Patent requires, as no portion of Apple's AirPods "rests upon an upper external curvature . . . behind an upper portion of an auricula."

92. For at least the reasons set forth above, Apple has not infringed and does not infringe at least claim 1 of the '325 Patent, either directly or indirectly, literally or under the doctrine of

equivalents, including through its making, use, sale or offer for sale in, or importation into the United States of the Apple AirPods.

**PRAYER FOR RELIEF**

WHEREFORE, Apple respectfully requests that judgment be entered:

A. Permanently enjoining Koss from using the substance or existence of any Communications subject to Paragraph 5 of the Confidentiality Agreement in any litigation, patent office proceeding, or any other court or administrative proceeding for any purpose;

B. Declaring that Apple does not infringe at least the identified claims of the Patents-in-Suit, directly or indirectly, literally or under the doctrine of equivalents, by the making, using, selling, offering to sell, and/or importing of the Apple Accused Products;

C. Awarding Apple its reasonable attorneys' fees under 35 U.S.C. § 285; and

D. Awarding any other remedy or relief to which Apple may be entitled and which is deemed appropriate by the Court.

**JURY DEMAND**

Apple demands trial by jury of all issues triable of right by a jury.

DATED: August 7, 2020                          Respectfully submitted,

 /s/ Michael T. Pieja
Michael T. Pieja (CA Bar No. 250351)
Alan E. Littmann (*pro hac vice* to be filed)
Lauren Abendshien (*pro hac vice* to be filed)
GOLDMAN ISMAIL TOMASELLI
  BRENNAN & BAUM LLP
200 South Wacker Dr., 22nd Floor
Chicago, IL 60606
Tel: (312) 681-6000
Fax: (312) 881-5191
mpieja@goldmanismail.com
alittmann@goldmanismail.com
labendshien@goldmanismail.com

Kenneth Baum (CA Bar No. 250719)
GOLDMAN ISMAIL TOMASELLI
  BRENNAN & BAUM LLP
429 Santa Monica Boulevard, Suite 710

Santa Monica, CA 90401
Tel: (310) 576-6900
Fax: (310) 382-9974
kbaum@goldmanismail.com

*Attorneys for Plaintiff Apple Inc.*